UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEEHAN & ASSOCIATES PLC,

      Appellee,

v.

STEVEN R. LOWE,

      Appellant.

_____/

Case No. 12-11768

Honorable Nancy G. Edmunds

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S MARCH 5, 2012 ORDER DENYING APPELLANT'S DISCHARGE

This is an appeal from a March 5, 2012 Bankruptcy Court order in a Chapter 7 bankruptcy adversary proceeding brought by Appellee and creditor Sheehan & Associates, PLC ("Sheehan & Associates") against Appellant and debtor Steven R. Lowe ("Lowe"). The Bankruptcy Court's order denied Lowe's discharge under 11 U.S.C. §§ 727(a)(3) and (4)(A). The Bankruptcy Court found that Lowe unjustifiably failed to keep adequate records from which his financial condition might be ascertained and also that Lowe, with fraudulent intent, made false oaths materially related to his bankruptcy. Lowe appeals, arguing that the Bankruptcy Court clearly erred in denying his discharge. For the reasons stated below, the Bankruptcy Court's March 5, 2012 order denying Lowe's discharge is AFFIRMED.

## I.   Facts

From 1999 to 2009, Lowe, his family, and their family business, LSM Systems Engineering, Inc. ("LSM"), were clients of the law firm, Sheehan & Associates. During this time, Sheehan & Associates represented Lowe's father and LSM in a number of

legal disputes related to the business of LSM. Sheehan & Associates also provided legal services to Lowe on a variety of personal matters unrelated to LSM. Up until 2008, Lowe's parents, through LSM, paid Lowe's legal bills for all of these services. These payments, while paid directly to Sheehan & Associates from LSM, were made as a loan to Lowe that he was paying back to his parents through a $10 payroll deduction from each monthly paycheck he earned from LSM. (Tr. at 148.) The amount of this loan is roughly $100,000. (*Id.*)

In April 2008, Sheehan & Associates began to work for Lowe on various criminal matters and a divorce proceeding. The work for these matters went on until September 2009. (R., Ex. 1 at 3, Complaint). Unlike Lowe's prior legal bills, Lowe's parents did not pay for the legal services provided to Lowe for these two cases, and Sheehan & Associates are still owed $196,536.27. (*Id.*)

On November 3, 2010 Sheehan & Associates filed a state court proceeding against Lowe for the cost of the unpaid legal work provided to him. (*Id.* at 4.) Lowe failed to file an answer to this complaint. (*Id.*)

On February 22, 2011, the same day that Sheehan & Associates would have been entitled to the entry of a default judgment against Lowe, Lowe filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. (*Id.*; J.A., Ex. 1.) Lowe hired new counsel to represent him in his bankruptcy, counsel which was paid for by LSM. Included on Lowe's Schedule F was an "undisputed" $204,544.09 claim owed to Sheehan & Associates described as "2009 Lawsuit-Non consumer."

It is undisputed that Lowe made the following false statements in his initial bankruptcy petition: (1) he marked the nature of his debts as being primarily business

debts; (2) he failed to list his parents or LSM as creditors in his Schedule F; (3) in his Statement of Attorney for Debtors Pursuant to F. R. Bankr. P. 2016(b), he misrepresented the source of his payments to his bankruptcy attorneys as from his own salary when his parents had paid them; and (4) he failed to list the loan payments he was making and had made to his parents on his Schedule I. (J.A., Ex. 1.) Lowe also did not keep records of the amount of money he owes to his parents or how much he has repaid.

Lowe amended his bankruptcy petition three times. The first time, on April 8, 2011, Lowe added his parents and LSM as creditors, but he listed the amount of the claim as "unknown." (*Id.*, Ex. 2 at 10.) He also changed the debt owed to Sheehan & Associates from "undisputed" to "disputed." (*Id.*) In the second amendment, on May 26, 2011, Lowe changed the nature of his debts from being primarily business debts to being primarily consumer debts. (*Id.*, Ex. 3 at 4.) However, the debt owed to Sheehan & Associates was still described as "Lawsuit-Non consumer." In the third amendment, on June 10, 2011, Lowe added to his Schedule I the loan repayments he was making to his parents through his payroll deduction. (*Id.*, Ex. 4 at 3.)

On May 13, 2011, Sheehan & Associates brought an adversary proceeding in the Bankruptcy Court against Lowe contesting the dischargeability of the debt. Sheehan & Associates alleged that Lowe's debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B) and alternatively argued that Bankruptcy Court should deny Lowe's discharge under 11 U.S.C. §§ 727(a)(3), (4)(A), and (7). On December 30, 2011, Lowe moved for summary judgment on all of these claims. On February 2, 2012, the Bankruptcy Court granted summary judgment in favor of Lowe for the claims under §§

3

523(a)(2)(B) and 727(a)(7), but denied summary judgment for the remaining claims. The Bankruptcy Court tried the remaining claims on February 16, 2012.

On March 5, 2012, the Bankruptcy Court issued an order from the bench dismissing Sheehan & Associates' claim that Lowe's debt was nondischargeable pursuant § 523(A), but denied Lowe's discharge pursuant to §§ 727(a)(3) and (4)(A). The Bankruptcy Court found that, pursuant to §727(a)(3), Lowe unjustifiably failed to keep or preserve adequate records from which his financial condition could be ascertained, and that, pursuant to § 727(a)(4)(A), Lowe fraudulently made false and material oaths on his bankruptcy schedules.

Lowe now appeals the Bankruptcy Court's ruling denying his discharge under §§ 727(a)(3) and 4(A).

## II.    Jurisdiction

Appellate jurisdiction is conferred on this Court by 28 U.S.C. § 158(a)(1) which states, "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, decrees; of bankruptcy judges under Section 157 of this title. An Appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.   Appellate Standard of Review

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo. Rogan v. Bank One, Nat'l Ass'n (In re Cook)*, 457 F.3d 561, 656 (6th Cir. 2006). "A finding of fact is clearly erroneous when 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

4

and firm conviction that a mistake has been committed.'" *Id.* (quoting *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1027 (6th Cir. 2001)). Under *de novo* review, the reviewing court decides an issue independently of the bankruptcy court's determination. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

## IV.   Analysis

Lowe argues that the Bankruptcy Court clearly erred in denying Lowe's discharge pursuant to 11 U.S.C §§ 727(a)(3) and (4)(A). Specifically, Lowe argues that the Bankruptcy Court clearly erred when it found, under § 727(a)(3), that: (1) Lowe failed to keep or preserve adequate records; and (2) that this failure was not justified under the circumstances. Lowe also argues that the Bankruptcy Court clearly erred when it found, under § 727(a)(4)(A), that: (1) he knew that the oaths he made were false; (2) he had the requisite fraudulent intent; and (3) the false oaths materially related to the bankruptcy. Sheehan & Associates argues that the Bankruptcy Court's findings were not clearly erroneous and its denial of discharge should be affirmed. This Court agrees with Sheehan & Associates, and the Bankruptcy Court's denial of discharge is affirmed.

### a.  11 U.S.C. § 727(a)

Section 727(a) of the Bankruptcy Code provides that a debtor's discharge should be granted unless one of twelve enumerated conditions is met. These exceptions to discharge "should be construed strictly against the creditor and liberally in favor of the debtor [while recognizing] that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Astro Building Supplies, Inc. v. Slavik*, 433 B.R. 651, 667 (E.D. Mich. 2010) (internal quotations and citations omitted).

5

Applicable in this case are the two exceptions enumerated in §§ 727(a)(3) and (4)(A). These sections provide:

(a) The court shall grant a debtor a discharge, unless –

***

(3) the debtor has concealed, destroyed, mutilated, falsified, *or failed to keep or preserve any recorded information*, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly or fradulantly, in or in connection with the case –

(A) made a false oath or account….

11 U.S.C. §§ 727(a)(3), (4)(A) (emphasis added).

### b.  The Bankruptcy Court did not Cleary Err in Denying Lowe's Discharge Under § 727(a)(3)

Section 727(a)(3) denies a discharge where the debtor "failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The purpose of this exception is "to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of disclosure requisite to a discharge*." Meridian Bank v. Alten*, 985 F.2d 1226, 1230 (3d Cir. 1992).

Courts have adopted two different tests to determine the adequacy of the debtor's records under § 727(a)(3). *Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (Bankr. W.D. Mich. 1997). The Sixth Circuit requires "the debtor to provide creditors with enough information to ascertain the debtor's financial condition

6

and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999) (internal quotations omitted). Other courts require the creditor objecting to the discharge to show: "(1) that the debtor failed to maintain or preserve adequate records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *See, e.g.*, *Meridian Bank*, 985 F.2d at 1232.

There is a shifting burden of proof under § 727(a)(3). First, the party seeking the denial of discharge has the initial burden of proving the inadequacy of the debtor's records. *Strbac*, 235 B.R. at 882. Second, once the party seeking denial has met its initial burden, the burden shifts to the debtor to establish that the failure to keep adequate records was justified under the circumstances. *Id.* at 883.

The adequacy of debtor's records and the debtor's justifications are determined on a case-by-case basis. *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990); *In re Cacioli*, 285 B.R. 778, 783 (Bankr. D. Conn. 2002) (stating that the determination of the debtor's justification is based upon "all of the circumstances of the case"). "Considerations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Trogdon*, 111 B.R. at 658. *See also Cacioli*, 285 B.R. at 783 (listing nine similar factors regarding the debtor's justification). The court has wide discretion to deny discharge pursuant to § 727(a)(3). *Dolin v. North Petro Chem. Co. (In re Dolin)*, 799 F.2d 252, 253 (6th Cir. 1986).

7

The Bankruptcy Court did not clearly err in finding that Lowe did not maintain or preserve adequate records. The Bankruptcy Court found that Lowe did not maintain adequate records because "he has not kept any records regarding significant transactions with his parents." (Appellee Br., Ex. A at 9, Bench Opinion.) At trial, Lowe did not contest that he did not keep any records of the money that he borrowed from his parents to pay his attorney fees. (Tr. at 149-54, Testimony of Stephen Lowe, Jr.) Without these records, Sheehan & Associates had no way of knowing how much Lowe's parents loaned to him or how much of the loan he had paid back. Furthermore, the amount of money that Lowe borrowed from his parents is significant – nearly $100,000. Because Lowe did not keep records of these significant transactions, he did not provide "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Strbac*, 235 B.R. at 882.

Although Lowe does not dispute that he failed to provide a record of loan these transactions, he contends that, even without this record, Sheehan & Associates had adequate information to ascertain his financial condition. Lowe states that he "provided [Sheehan & Associates] with voluminous documents including but not limited to tax returns, bank statements, real estate documents, pay stubs, and detailed reports of the [Lowe's] income and expenses." (Appellant Br. at 2.) Furthermore, Lowe argues that, because Sheehan & Associates has represented him for many years, they "kn[o]w more about and [are] more familiar, with [Lowe's] financial affairs than [Lowe] himself." (*Id.* at 3). They also are aware of the amount of the loan because they were the recipient of the payments made by Lowe's parents. (*Id.*).

8

However, even with this information, Lowe failed to provide adequate information under § 727(a)(3). The argument that a creditor "could and should have reconstructed [the debtor's] financial condition is legally untenable." *In re Wazeter*, 209 B.R. at 118. In *In re Wazter*, the debtor argued that because the creditor already had information regarding the debtor's financial condition without the debtor supplying additional information and also had the ability to investigate and gather other records, the debtor's failure to provide certain financial records did not result in him providing inadequate information. *Id.* The court disagreed. It held that the burden was not on the creditor "to investigate and acquire necessary records ... [but rather] the burden was on the debtor to produce them." *Id.*

Similarly, Lowe's argument here is legally untenable. The burden is not on Sheehan & Associates to investigate how much Lowe owes his parents, but on Lowe to provide records of that information. The information that Lowe has provided is not adequate to ascertain the amount of this loan. Therefore, he has failed to maintain and preserve adequate records under § 727(a)(3).

That some cases require the creditor to prove that "such failure [to maintain and preserve adequate records] makes it impossible to ascertain the debtor's financial condition and material business transactions" does not help Lowe's position. *See, e.g.*, *Meridian Bank*, 958 F.2d at 1232. Although the language on its face appears to help Lowe's position, according to the court in *In re Wazeter*:

> In stating the "impossibility" test, however, no court has suggested that it means that a debtor is relieved from the burden of producing records unless the creditor can show the impossibility of discovering each piece of necessary financial information. The debtor's obligation to produce records remains a prerequisite to discharge under the statute.

9

209 B.R. at 229. Even under this test, Lowe is obligated to produce the records of the significant amount of money he owes his parents. It is not enough to show that Sheehan & Associates might have the ability to find the information elsewhere. Lowe is not free from the burden of producing adequate records. *See id.*

The Bankruptcy Court also did not clearly err in finding that Lowe's failure to maintain or preserve adequate records was not justified. The debtor's justification is a determination based on all of the factors of the case, *In re Cacioli*, 285 B.R. at 783, and the Bankruptcy Court has broad discretion in denying the debtor's discharge. *In re Dolin*, 799 F.2d 252, 253.

Lowe argues that he was justified in failing to provide adequate records because he lacked a formal education or training in accounting. This argument does not leave this Court with a definite and firm conviction that a mistake has been committed. Although some courts have found a debtor's failure to preserve adequate records to be justified based on factors such as the debtor's lack of education or experience, these courts' findings were all based on the specific circumstances of the case. *See, e.g., In re Cacioli*, 285 B.R. at 783 (finding that debtor to be justified where, among other circumstances, he could not be expected to keep "sophisticated records" given his education and experience). However, unlike cases like *Cacioli*, Lowe did not merely fail to keep sophisticated records of the loans given to him by his parents, he kept no record at all. Furthermore, unlike *Cacioli*, where "the Debtor's trial testimony was frank, non-evasive, and highly credible," *id.*, the Bankruptcy Court found Lowe's testimony to not

10

be believable and doubted his credibility as a witness. (Appellee's Br., Ex. A at 15, Bench Opinion.)

Lowe's reliance on *In re Goldman*, 37 F. Supp 761 (E.D.N.Y. 1941) also does not leave this Court with a definite and firm conviction that a mistake has been committed. The court in *In re Goldman* found that the debtor was justified in his failure to maintain records because "he did not need the assistance of books to know what his assets and liabilities were." 37 F.Supp at 761. Furthermore, loans that he made to his family were only "for isolated transactions." *Id.* In this case, Lowe did need the assistance of books to know what his assets and liabilities were. Lowe testified that he did not know how much his parents had paid for his attorney's fees. Furthermore, the loans in this case were not mere "isolated transactions," but were significant. The Bankruptcy Court's findings that Lowe did not keep adequate records and that this failure was not justified are not clearly erroneous.

### c. The Bankruptcy Court did not Clearly Err in Denying Lowe's Discharge Under § 727(a)(4)(A)

In order for a court to deny a discharge under § 727(a)(4)(A), the party objecting to the debtor's discharge must prove by a preponderance of the evidence:

> (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Keeny v. Smith (In re Keeny)*, 227 F.3d 679, 685 (6th Cir. 2000). A false statement or omission made by a debtor on his schedules or statement constitutes a false oath or statement under Section 727(a)(4)(A*). Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718,

11

725 (Bankr. E.D. Mich. 2003). Also, a debtor cannot exonerate himself from having made a false oath sufficient to deny his discharge under § 727(a)(4)(A) by amending his schedules. *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir. 2001). "Whether a debtor has made a false oath under Section 727(a)(4)(A) is a question of fact." *In re Keeny*, 227 F.3d at 685.

It is undisputed that the statements Lowe made in his bankruptcy petition were made under oath and were false. Therefore, the only issues are whether the Bankruptcy Court clearly erred in finding that that the statements were materially related to the bankruptcy, that Lowe knew that the statements were false, and that Lowe had the requisite fraudulent intent.

The Bankruptcy Court did not clearly err in finding that Lowe's false oaths were materially related to his bankruptcy. A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeny*, 227 F.3d at 686 (internal quotations and citation omitted).

The Bankruptcy Court found that Lowe's false oaths were materially related to his bankruptcy because Lowe's omissions and concealments prevented Sheehan & Associates an adequate opportunity to investigate Lowe's business and financial affairs. Furthermore, the false oaths were directly related to the significant financial relationship between Lowe and his parents.

Lowe argues that the false oaths were not material because "in no way do they effect [sic] the administration of the Debtor's estate or discovery of assets, business dealings, or the existence and disposition of debtor's property. (Appellee Br. at 5).

12

Lowe's omissions, he argues, do not adversely affect Sheehan & Associates, and therefore do not materially relate to his bankruptcy under § 727(a)(4)(a). This Court disagrees. "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174,178 (5th Cir. 1992) (quoting 4 *Collier on Bankruptcy,* ¶ 727.04[1], at 727-59 (15th ed. 1992)). And, although trivial matters are considered to be immaterial, *In re Cutler*, 291 B.R. at 725, this matter was not trivial. Lowe's parents have loaned him roughly $100,000 for his legal defense.

Furthermore, the question is not whether the false oaths *affect* the administration of the Debtor's estate or discovery of assets, business dealings, or the existence and disposition of debtor's property, as Lowe claims, but whether the false oaths *bear a relation* to these things. *In re Keeny*, 227 F.3d at 686. It is not Lowe's role to decide what is relevant or important to the administration of his estate and what is not. *In re Cutler*, 291 B.R. at 726. "Creditors are entitled to judge for themselves what will benefit, and what will prejudice them." *In re Beaubouef*, 966 F.2d at 178 (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)). The Bankruptcy Court did not clearly err in finding that Lowe's false oaths materially related to his bankruptcy.

The Bankruptcy Court also did not clearly err in finding that Lowe made the false oaths knowingly and with fraudulent intent. Fraudulent intent requires: (1) a material misrepresentation by the debtor that the debtor knows to be false; (2) a material misrepresentation made with reckless disregard as to its truth; or (3) a material omission that the debtor knows will create an erroneous impression. *Barcume v. Fox (In re Fox)*, No. 11-12036, 2012 WL 954752, at *9 (E.D. Mich. March 21, 2012) (citing *In re*

*Keeny*, 227 F.3d at 685). Fraudulent intent is not established if the false information resulted from a mistake or inadvertence. *Id.* However, it can be found based on "the cumulative effect of a series of innocent mistakes which evidence a pattern of reckless and cavalier disregard for the truth." *Stevenson v. Taylor* (*In re Taylor*), 461 B.R. 420, 423 (E.D. Mich. 2011) (quoting *Discenza v. Macdonald* (*In re MacDonald*), 50 B.R. 255, 259 (Bankr. D. Mass. 1985) (internal quotations omitted)). It may also be inferred from all of the facts and circumstances of the case. *In re Keeny*, 227 F.3d at 686.

The Bankruptcy Court found that Lowe's oaths were made knowingly and with fraudulent intent because even though each false oath individually could have been explained away, "in the aggregate they show[ed] a pattern. [Lowe] does not want to repay his debt to [Sheehan & Associates]. He does not want to reveal how much in legal bills his parents have paid and are currently paying on his behalf." (Appellee's Br., Ex. A at 12, Bench Opinion.) It further based this finding largely on the Lowe's credibility and demeanor as a witness at the trial. (*Id.* at 15.) It found that Lowe's explanations for the false oaths were "not believable" and that Lowe lacked credibility as a witness. (*Id.*).

Lowe argues that these oaths were not made with fraudulent intent because he is uneducated and lacks an understanding of the bankruptcy process. Therefore, each false oath was only an inadvertent mistake. This Court does not agree. As the Bankruptcy Court discussed, Lowe made multiple false oaths concerning his financial relationship with his parents. This pattern evidences an attempt to conceal his financial relationship with his parents. And, even if he does lack an understanding of the bankruptcy process, his mistakes at least show a "reckless and cavalier disregard for the truth." *In re Taylor*, 461 B.R. at 423. Furthermore, the Bankruptcy Court did not

14

believe Lowe's explanations, and due regard is to be given to the bankruptcy court to determine the credibility of witnesses. Fed. Bankr. R. 8013. The Bankruptcy Court did not clearly err in finding that Lowe's false oaths were made with fraudulent intent.

## V. Conclusion

For the above-stated reasons, this Court AFFIRMS the Bankruptcy Court's March 5, 2012 order denying Appellant's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (4)(A).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 30, 2012, by electronic and/or ordinary mail

s/Carol A. Hemeyer
Case Manager